UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT R. ROBINSON,<br><br>    Petitioner,<br><br>    v.<br><br>G. GASTELLO,<br><br>    Respondent. | No. 2:19-cv-00453 KJM GGH P<br><br><u>FINDINGS AND RECOMMENDATIONS</u> |

*Introduction and Summary*

    Petitioner, a state prisoner proceeding pro se, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter was referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302(c).

    Petitioner brings one claim of juror misconduct in this habeas petition.[1] However, more to the point, petitioner posits a claim that the jury, or several jurors, *almost* committed misconduct. "Almost" is not good enough for a winning habeas petition. Accordingly, the undersigned finds no cognizable misconduct in the first instance, and even if there were,

---

[1] In the petition, a claim of ineffective assistance of counsel was also raised. However, by Findings and Recommendations, ECF No. 11, adopted by Order, ECF No. 16, the ineffective assistance claim was stricken without prejudice for lack of exhaustion. The court file does not reflect that this claim has been exhausted to date.

petitioner suffered no prejudice whatsoever. After careful reviewing the filings, the undersigned now issues the following findings and recommendations and recommends the petition should be denied.

*Factual Background*

The California Court of Appeal fairly set forth the facts germane to this habeas petition in People v. Robinson, No. C077362, 2018 WL 458043, *2-4 (Cal. App. Jan. 18, 2018):

> Defendant agreed to buy a car from Markell Martin and took the car but did not pay for it. When Martin threatened to report the car as stolen, defendant threatened to kill him if he called the police. In March 2013, defendant drove by Martin's home in a car with at least one other person, and shots were fired at the home. This shooting was not charged in this case.
>
> Martin and his fiancée Alexis Willrich moved away from the area. In April 2013, at the new house, Willrich saw, through a window at the front of the house, a car ma[d]e a U–turn in front of the house. She asked Martin who pulled up, so he opened the front door to see who it was. Martin and Willrich both saw defendant in the car. Four people were in the car including defendant. The occupants other than defendant were disguised with their faces covered. Defendant was driving the car. The person in the front passenger seat was large and wore glasses and looked like a friend of defendant's named Snap. Defendant leaned out the car window and fired multiple rounds at the house. One or more of the other occupants of the car also shot at the house. A barrage of bullets entered the house through the door and through the walls, and Willrich was hit in the stomach.
>
> The district attorney charged defendant by information with one count of shooting at an inhabited dwelling (Pen. Code, § 246),[2] two counts of assault with a firearm (§ 245, subd. (a)(2) ), and one count of possession of a firearm by a felon (§ 29800, subd. (a)(1) ). The information alleged that the assault with a firearm counts involved defendant's personal use of a firearm (§ 12022.5, subds. (a) & (d) ) and that defendant had a prior serious strike felony (§ 667) and a prior conviction resulting in a prison term (§667.5, subd. (b) ).
> A jury convicted defendant on all charges, and the trial court found true the prior conviction allegations. The court denied defendant's motion for new trial, which alleged juror misconduct, and sentenced defendant to an aggregate term of 29 years 8 months in state prison.
>
> ***
> During deliberations, Juror No. 9 asked to speak to the court. She related that, early in the deliberations, disagreements arose over what testimony to have read back. Juror No. 9 said she wanted to hear testimony about who fired the shots. She continued: "I

---

[2] [Fn. 1 in original excerpted text] Hereafter, unspecified code citations are to the Penal Code.

2

mentioned ... I wanted to rehear something because I wanted proof of who the shooter was, if he was the shooter or if he was just in the car. And two other jurors said that didn't matter. It doesn't matter if he was a shooter or not. That they felt strongly about their opinion, that it didn't matter if he was actually the one that shot the gun or if he was just there, their verdict would be the same. And that upset me."

No instructions had been given to the jury concerning aiding and abetting liability, so the prosecution's sole theory was that defendant was the actual shooter. (Defendant does not contend on appeal that the jury was improperly or inadequately instructed.)

The trial court sent Juror No. 9 back in to deliberate further, but the court expressed consternation that some of the jurors may not have understood the instructions.

The next morning, the court again expressed concern that some of the jurors might not be following the law. The court decided to bring each juror, separately, into the courtroom and ask about whether anyone in the jury room said that it did not matter whether defendant was the actual shooter. The following are the jurors' responses:

Juror No. 9 (Ms. S., the juror who brought the concern to the court's attention): two people said it did not matter whether defendant was the actual shooter—Juror No. 5 (Ms. R.) and an unidentified older male juror.

Juror No. 1 (Ms. A.): two or three unidentified female jurors said it did not matter whether defendant was the actual shooter.

Juror No. 8 (Mr. Y., a young male juror): Juror No. 9 said it did not matter whether defendant was the actual shooter.

Juror No. 2 (Mr. R.): Juror No. 4 (Mr. K.) said it did not matter whether defendant was the actual shooter, and Juror No. 9 (Ms. S.) said something to the effect of "so for some of you in here, it [doesn't] matter if he was in the car or not."

Juror No. 4 (Mr. K.): He may have heard a juror say that it did not matter, on the issue of guilt, whether defendant was the shooter or just someone in the car.

Juror No. 10 (Mr. D.): Someone might have said that it did not matter whether defendant was the shooter or just in the car, but Juror No. 10 did not remember who said it.

Juror No. 11 (Mr. B.): He did not recall anyone saying that it did not matter whether defendant was the shooter or just someone in the car.

Juror No. 7 (Ms. L.): She either did not remember hearing that anyone said it did not matter whether defendant was the shooter or just someone in the car, or if she heard it she simply dismissed it.

3

Juror No. 12 (Ms. T.): She said it was "possible there was something said to the effect that if there's a crime committed, like, for instance, the case of the bank in Stockton. If they were to find the fourth person, that this—." At this point, the court cut off Juror No. 12, saying she was not to discuss juror deliberations. Juror No. 12 said "[i]t could have been [her]" who said it. After Juror No. 12 left the courtroom, the court said: "[T]he bank thing is a common aider and abett[o]r liability scenario that I don't think she got from us."

Juror No. 6 (Ms. D.): She remembered someone saying that it did not matter whether defendant was the shooter or just someone in the car, but she did not remember who said it. There was "a lot of cross talk."

Juror No. 3 (Mr. M.): He did not hear anyone say that it did not matter whether defendant was the shooter or just someone in the car.

Juror No. 5 (Ms. R.): She remembered someone saying that it did not matter, on the issue of guilt, whether defendant was the shooter or just someone in the car, but she did not remember the exact words. Nor did she remember who said it. She said there was "a context around it." But the trial court prevented her from explaining the context.

The trial court also asked each juror, if the juror was willing to follow the law as found in the jury instructions, and each juror responded affirmatively.

After questioning each juror, the court said: "We have spoken with the jurors. I'll say tentatively I want to hear from you guys [the attorneys], but I—my feeling is, is that it was said and that there is a danger, given the instructions and given what one of the women said about—started to say about aiding and abetting a bank robbery, that there's a danger a guilty verdict could be based on aiding and abetting, which we have not instructed on and which was not argued. [¶] So I'm going to suggest that we either reopen argument to make that clear or that we construct a[n] instruction that we send in to all of these jurors. They have now all said that they will follow our instructions."

The prosecutor argued that the court should give an instruction on aiding and abetting, while the defense argued that instructing on aiding and abetting would violate defendant's due process rights because the case was not prosecuted on that theory. The defense also moved for mistrial based on jury misconduct because one of the jurors said something about it not mattering whether defendant was the shooter or was just in the car and no juror admitted saying it.

The court refused to instruct on aiding and abetting because the parties tried the case on a direct perpetrator theory only.

The court expressed its opinion that Juror No. 5 (Ms. R.) said it did not matter whether defendant was the shooter or just someone in the car. And defense counsel asked that she be excused from the jury because she did not admit, when questioned by the court, that she was the one who made the statement. The court responded: "I had the impression she was hedging? I shouldn't say my impression is so strong as to warrant saying she was lying. I felt she was hedging. I don't think it was unreasonable that she was hedging given that she was the last juror who was pulled in here. She clearly was nervous. [¶] I don't think it warrants removing her from the jury. I don't think it indicates that she is not able to perform her duties as a juror, given the ameliorative measures we have taken."

Defense counsel noted that at least two jurors indicated that two or more people had made the comments about defendant being guilty whether he was the shooter or just someone in the car and that establishes that whoever made those comments and did not admit it to the court was being untruthful. On that basis, the defense made a motion for mistrial. The court said it was not clear what statements were made by whom because of the free-flowing nature of deliberations where more than one person might be talking at a time. The court found no reasonable basis for concluding that any other juror was lying. On that basis, the court denied the motion for mistrial.

The court sent a written clarification of the instructions to the jury as follows: "It has come to the Court's attention that the jury may benefit from a clarification as to the application of the previously given instructions. It is the People's theory that [defendant's] liability for the charged crimes, if any, is as the person who fired the gun. Consider this clarification along with the previously given instructions. The People must prove the elements of each charge beyond a reasonable doubt. If the People have not met this burden you must find the defendant not guilty."

The jury had not reached a verdict by the end of the day, and Juror No. 9 (Ms. S.) reminded the court that she had vacation tickets for the next week and would lose them if she did not use them. The court excused her and chose an alternate to become a juror on Monday. The court instructed the jury to begin deliberations over again.

After trial, defendant moved for a new trial based on juror misconduct. The court ruled that there was no misconduct and, even if there was misconduct, there was no prejudice. It concluded that any prejudice was cured by the court's instruction on the prosecution theory and by the fact that the jury found that defendant personally used a firearm in committing the crime. Finally, the court stated that "a reasonable juror could not find [defendant] to have been involved in this situation as anything other than the shooter."

////

////

*AEDPA Standards*

The statutory limitations of the power of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The text of § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), clearly established federal law consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 565 U.S. 34, 39 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)). Circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 63-64 (2013) (citing Parker v. Matthews, 587 U.S. 37, 48 (2012)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id.

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Lockyer v.

6

Andrade, 538 U.S. 63, 75 (2003); Williams, supra, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, supra, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, supra, 538 U.S. at 75 (it is "not enough that a federal habeas court, 'in its independent review of the legal question,' is left with a 'firm conviction' that the state court was 'erroneous.'") "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, supra, 562 U.S. at 103.

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, supra, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (*en banc*). "[Section] 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington, supra, 562 U.S. at 100. Rather, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100. Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a "federal habeas court

7

must presume (subject to rebuttal) that the federal claim was adjudicated on the merits." Johnson v. Williams, 568 U.S. 289, 293 (2013). When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, supra, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

The state court need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at its decision. Early v. Packer, 537 U.S. 3, 8 (2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, supra, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Id. at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, supra, 562 U.S. at 98. A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Harrington, supra, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Id. at 101 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)). Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not mean the state

8

court's contrary conclusion was unreasonable." Id. at 102 (citing Lockyer, supra, 538 U.S. at 75).

In this case, the California Court of Appeal, the last state court to issue an explained decision, expressly did not reach the issue of whether misconduct had in fact occurred within the jury, but rather it presumed such and went on to find that the People has rebutted any inference of prejudice. Thus, the issue of whether misconduct occurred, an issue discussed by respondent, is a matter of de novo review. Whether a presumption of prejudice was rebutted, is a matter for AEDPA deference.

*Discussion*

<u>Whether the Jury, or Several Jurors, Committed Misconduct</u>

A. **Whether Misconduct Occurred**

As set forth above, the existence *per se* of juror misconduct is not a matter of AEDPA deference. Two principles are to be applied here: The internal deliberations of the jury are not to be examined in a post-trial procedural setting, <u>Warger v. Shauers</u>, 574 U.S. 40 (2014), <u>Tanner v. United States,</u> 483 U.S. 107, 123–125 (1987); and the jury may not rely on expressly obtained and/or communicated information extraneous to the trial itself, <u>Turner v. State of La</u>, 379 U.S. 466, 551 (1965); <u>Sassounian v. Roe</u>, 230 F.3d 1097, 1104-1105, 1108-1101 (9th Cir. 2000) (out-of-court evidence of a phone call made to the Turkish consulate taking credit for the assassination of the victim).

Petitioner's allegations here extend only to the alleged fact that in seeming disregard of jury instructions, one or two jurors communicated their belief that they need not find that petitioner actually utilized the weapon at issue, but could rely on the fact that he was involved in the underlying criminal activity. These allegations are non-cognizable and do not constitute extraneous information.

One could hypothesize certain instances where disregard of jury instructions was occasioned by receipt or use of extraneous information. For example, and hypothetically, a juror, despite an instruction requiring personal use of a weapon, could specifically describe during deliberations an episode of *Law and Order,* similar to the criminal activity upon which they were deliberating, where the fictional court instructed that personal use of a weapon was not necessary

9

in order to find guilt. And, the juror could argue that this TV episode supplied the rule of law for the case under deliberations. Or, a juror could supply extraneous-to-the-trial dictionary definitions during deliberations to figure out terms used in instructions, see e.g., Marino v. Vasquez, 812 F.2d 499, 503-05 (9th Cir. 1987), to clear up what should have been interpretation problems communicated to the court.

On the other hand, and simply as a matter of internal deliberations, a juror might communicate a confusion or misinterpretation of the instructions given. This latter situation is non-actionable. A case in point was decided in this district—Schmitz v. Lizarraga, No. 2:14-CV-00659-JKS, 2016 WL 2855066 (E.D. Cal. May 16, 2016). This case involved a situation where a number of alleged instances of juror misconduct occurred during deliberations, including one were a juror argued that the jury could "disregard the defense instruction" outlining the defendant's mental defect defense. Schmitz, at *12. This was held to be simply the internal processes of jury deliberation, not reviewable by evidentiary hearing or otherwise. Id. at *13.[3] See also Renteria v. Kernan, No. 05CV2266 (BLM), 2007 WL 1238663 (S.D. Cal. Apr. 24, 2007) (jury foreman's expressed view that he was not at liberty to share the written instructions with the other members of the jury, and the foreman's erroneous view of the law, not actionable as extraneous to the deliberations information).

Here, the allegation that members of petitioner's jury wrongly asserted a matter of law contrary to the instructions falls short of what is considered extraneous information. Petitioner presents no allegations that the fallacious argument was predicated on any outside source. At best it occurred during the give and take of jury deliberations for some unknown reason.

B. **Whether Any Misconduct Was Harmless**

The Court of Appeal assumed misconduct for the purpose of argument, and held, under the facts set forth above, and applying state law, that the State had rebutted any presumption of

---

[3] Fed. R. Evid. 606(b) prohibiting examination of the internal deliberations of the jury applies in habeas proceedings. See Anderson v. Terhune, 409 Fed. App'x. 175, 2011 WL 148912 (9th Cir. 2011). See also Estrada v. Scribner, 512 F.3d 1227, 1237 (9th Cir. 2008) (affirming use of Rule 606(b) in a habeas proceeding). Thus, the federal court cannot undertake to examine such internal deliberations in evidentiary hearing in violation of the Rule.

10

////

prejudice occasioned by the assumed misconduct. People v. Robinson, 2018 WL 458043, at **2, 4-5.

Even if misconduct were to be found by the juror's[s'] misinterpretation/disregard of the instructions, such misconduct is not actionable here if it is harmless. In federal habeas proceedings, the harmlessness of jury misconduct is determined by the Brecht v. Abrahamson, 507 U.S. 619 (1993) "substantial and injurious effect on the verdict" standard. Estrada, supra, 512 F.3d at 1235; Fields v. Brown, 503 F.3d 755, 782 (9th Cir. 2007); Sassounian, 230 F.3d at 1108.[4] The last explained state court decision on this issue is entitled to AEDPA deference.[5]

In finding insufficient prejudice, the state appellate court found that the trial judge had taken substantial efforts to correct any misapprehension that jurors might have had about the need to find that petitioner fired the weapon. The jury was told, after the misapprehension came to light, that the prosecution's theory *required* a finding that petitioner fired the weapon. The special hearing in court with the jurors would have been an "uh-oh" moment in that the trial judge's questioning and re-instruction would have convinced every juror that the previously expressed views, that petitioner could have been found guilty without firing the weapon, were in error. Moreover, for reasons unconnected with the misapprehension, the jury had to "start from scratch" in its deliberations after the re-instruction. Finally, the jury ultimately and specifically

---

[4] Respondent ponders whether the "presumption of harmfulness" set forth for jury misconduct in federal prosecution cases, Remmer v. United States, 347 U.S. 227 (1954), might apply here. See, Broode v. Johnson, No. C-13-2438 EMC (pr), 2015 WL 1967089 (N.D. Cal. May 1, 2015). However, the Supreme Court has held since 1993-- that in review of state court convictions (in non-structural error situations), harmlessness is judged by the "substantial and injurious effect on the verdict" standard. Brecht, supra. This point was reemphasized in Fry v. Pliler, 551 U.S. 112 (2007).

[5] The fact that the state court here applied a stricter, different standard—a presumption of prejudice which must be rebutted by the state—see Robinson, at *2, does not mean that the harmlessness error analysis undertaken by the state appellate court under this stricter standard is irrelevant. Clearly a finding of no prejudice under the stricter standard would make the outcome of the Brecht analysis more obvious in an AEDPA unreasonableness context. Davis v. Ayala, 135 S.Ct. 2187, 2198 (2015). As Fry held, the stricter standard is simply subsumed into the lesser Brecht standard. Fry, 551 U.S. at 120. To prevail here, petitioner would have to show that no fairminded jurist could find the [assumed] juror misconduct not to have had a substantial and injurious effect on the verdict. Davis, supra. Of course, where a state court applies a standard more lenient that that required by the Supreme Court, no deference is given. Even if Brecht were to be applied *de novo*, for the reasons set forth in the text, infra, the finding of insufficient prejudice is an easy one.

////

found that petitioner had "personally used" the weapon. The state appellate court was AEDPA reasonable beyond the shadow of a doubt.

*Conclusion*

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth in these findings and recommendations, a substantial showing of the denial of a constitutional right has not been made in this case.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition, as presently constituted, should be denied on its merits and dismissed; and
2. The District Court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 2, 2019

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE